IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA



Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **UNDER SEAL** |
| ) | CRIMINAL NO. 2:08cr168 |
| v. ) | |
| ) | 18 U.S.C. § 371 |
| RIADH HAMZA SADDEM, ) | Conspiracy |
| (Counts 1, 3-6, 10) ) | (Count 1) |
| ) | |
| ) | 8 U.S.C. § 1325(c) |
| MAHMOUD SADDAM, ) | Marriage Fraud |
| (Counts 1, 3-5, 10,12-15) ) | (Counts 2-3) |
| ) | |
| AROUA SADDAM, ) | 18 U.S.C. § 1015 |
| (Counts 1,6,11,16) ) | False Statements in an Immigration |
| ) | Proceeding |
| ROSS ANTHONY HARDY, ) | (Counts 4-8) |
| (Counts 1,2,7-9) ) | |
| ) | 18 U.S.C. § 287 |
| IRINA KOBYLYATSKAYA, ) | False Claim |
| a/k/a "Irina Hardy" ) | (Count 9) |
| (Counts 1,2,7-8) ) | |
| ) | 18 U.S.C. § 1512(b)(1) |
| Defendants. ) | Tampering with a witness |
| ) | (Counts 10-11) |
| ) | |
| ) | 18 U.S.C. § 1519 |
| ) | Falsification of records in a |
| ) | Federal Investigation |
| ) | (Count 12) |
| ) | |
| ) | 8 U.S.C. § 1324(a)(1)(A)(iv) |
| ) | Inducing an Alien to Reside |
| ) | Illegally in the United States for Financial |
| ) | Gain |
| ) | (Counts 13-14) |
| ) | |
| ) | 8 U.S.C. § 1324(a)(1)(A)(iii) |
| ) | Harboring Illegal Aliens for |
| ) | Financial Gain |
| ) | (Count 15) |
| ) | |

)      18 U.S.C. § 1503
)      Obstruction of Justice
)      (Count 16)

## SUPERSEDING INDICTMENT

November 2008 Term – At Norfolk, Virginia

### Introductory Allegations

THE GRAND JURY CHARGES THAT:

At all times relevant to this indictment:

1.     Aliens who wish to become lawful permanent residents of the United States and eventually become naturalized United States citizens may avoid the numerical restrictions on the number of immigrants allowed in the United States, as well as certain visa and other requirements imposed by the law, by becoming the spouse of a United States citizen.

2.     A United States citizen may petition the government of the United States to grant an alien spouse lawful permanent resident status without regard to the numerical restrictions noted previously by filling out a Form I-130 (Petition for Alien Relative).

3.     An approved immediate relative visa petition allows an alien spouse to file a Form I-485 (Application to Register Permanent Resident or Adjust Status) requesting that the United States Government adjust the alien spouse's status to that of a lawful permanent resident without the alien having to leave the United States. If the alien cannot adjust status this way, the alien must leave the United States, obtain an immigrant visa at a United States embassy in the alien's home country, and reenter the United States.

4.     Forms I-130 and I-485 are typically filed together and the visa petition and adjustment application are adjudicated at the same time. In support of these applications, the United States citizen spouse and the alien spouse each submit Biographic Information forms

2

(Form G-325A) containing biographic information.

5.    Title 8, United States Code, Section 1325(c) provides that it is a crime to "knowingly enter into a marriage for the purpose of evading any provision of the immigration laws."

6.    The United States Navy provides certain service members a Basic Allowance for Housing (BAH) to help offset the costs of suitable housing for its members. Only certain classes of service members, such as service members who have dependents, are eligible for BAH. If a service member is eligible to receive BAH, he normally must file the appropriate paperwork at the local personnel office certifying his eligibility. The service member becomes eligible for increased BAH once he is married. Once his paperwork is properly filed, BAH is disbursed to a service member along with his base pay and any other pay to which he may be entitled on a bi-monthly basis. If the service member's circumstances change in such a manner that he is no longer eligible to receive BAH, it is the service member's responsibility to return to the local personnel office and file the appropriate paperwork to discontinue the BAH payments.

7.    Defendant RIADH HAMZA SADDEM, was born in Tunisia. According to information from the Department of Homeland Security, he entered the United States on a B2 tourist student visa on July 20, 2001. His visa expired on October 20, 2001 and after that date, he was an overstay and illegally present in the United States.

8.    Defendant MAHMOUD SADDAM was born in Tunisia and is a Naturalized United States Citizen.

9.    AROUA SADDAM and Unindicted Co-Conspirator One (UC1) are United States Citizen's.

10.    Defendant ROSS ANTHONY HARDY (HARDY) is a United States citizen and was an active duty service member in the United States Navy stationed in Norfolk, Virginia on the USS WASP.

11.    Defendant IRINA KOBYLYATSKAYA a/k/a "Irina Hardy" (KOBYLYATSKAYA) is a citizen of Kazakhsan, According to information from the Department of Homeland Security, she entered the United States on a J1 exchange visa on May 21, 2004. In October of 2004 she changed her visa to a B2 Tourist Visa. Her tourist visa expired on March 29, 2005 and after that date, she was an overstay and illegally present in the United States.

12.    Unindicted co-conspirator, Matthew Raymond Saiz (Saiz) is a United States citizen and was an active duty service member in the United States Navy in the past, stationed in Norfolk, Virginia on the USS WASP.

13.    Unindicted co-conspirator Liliya Khalilevna Dautova (Dautova) also known as "Liliya Saiz" is a citizen of Russia. According to information she reported, she entered the United States on a J1 student visa on May 31, 2005.    Her J1 visa was set to expire on September 30, 2005.

## Count One

1.    The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.    In the period from in or about October 2001 through the date of this indictment, in the Eastern District of Virginia and elsewhere, the defendants RIADH HAMZA SADDEM, MAHMOUD SADDAM, AROUA SADDAM,  IRINA KOBYLYATSKAYA a/k/a "Irina

Hardy", ROSS ANTHONY HARDY and others both known and unknown to the Grand Jury, knowingly and unlawfully combined, conspired, and agreed together and with each other to commit the following offenses, that is:

(A)    to unlawfully and knowingly enter into a marriage to evade any provision of the immigration laws in violation of Title 8, United States Code, Section 1325(c);

(B)    to knowingly make false statements under oath in any case, proceeding, and matter relating to, and under, and by virtue of any law of the United States relating to naturalization, citizenship, and registry of aliens, in violation of Title 18, United States Code, Section 1015(a); and

(C)    To knowingly or in reckless disregard of the fact that an alien has come to, entered, remains in the United States in violation of law, conceals, harbors, or shields from detection such alien in any place, including any building or any means of transportation in violation Title 8 United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i)

(D)    To encourage or induce an alien to reside in the United States, knowing or in reckless disregard of the fact that such residence will be in violation of law in violation of Title 8 United States Code, Sections 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i).

### Object, Ways, Manners, and Means of the Conspiracy

The ways, manner, and means by which the conspiracy was carried out included, but were not limited to, the following:

1.     The object of the conspiracy was for defendants RIADH HAMZA SADDEM and KOBYLYATSKAYA to obtain lawful permanent resident status and, potentially, eventual citizenship in the United States.

2.     It was part of the conspiracy that defendants RIADH HAMZA SADDEM, MAHMOUD SADDAM, AROUA SADDAM, KOBYLYATSKAYA, and HARDY conspired with each other and others both known and unknown to the grand jury so that RIADH HAMZA SADDEM and KOBYLYATSKAYA could enter into a marriage with an American citizen for the purpose of obtaining lawful permanent resident status in the United States.

3.     It was further part of the conspiracy that MAHMOUD SADDAM, AROUA SADDAM, and KOBYLYATSKAYA would coach RIADH HAMZA SADDEM and UC1 to make certain false statements about the status of their marriage and other matters to United States Citizenship and Immigration Services (USCIS) officials.

4.     It was further part of the conspiracy that ROSS who was a member of the United States Naval Service would make claims for and receive Basic Allowance for Housing (BAH) from the Department of the Navy based on his respective fraudulent marriages to KOBYLYATSKAYA.

5.     It was further part of the conspiracy that MAHMOUD SADDAM would knowingly hire aliens who were unlawfully in the United States and ineligible to work including RIADH HAMZA SADDEM and KOBYLYATSKAYA to make a profit and induce said aliens to remain unlawfully in the United States.

6.     It was further part of the conspiracy that MAHMOUD SADDAM would knowingly harbor RIADH HAMZA SADDEM who was unlawfully in the United States and ineligible to

work to make a profit and shield RIADH HAMZA SADDEM from possible detection by federal authorities.

7.    It was further part of this conspiracy that AROUA SADDAM and other unindicted co-conspirators would threaten UC1, who was a government witness, in an effect to corruptly persuade her to testify that she was in a bonafide marraige with RIADH HAMZA SADDEM.

### Overt Acts

In furtherance of this conspiracy and to the effect of its objects, the following acts were committed in the Eastern District of Virginia and elsewhere:

1.    In or about November 2001, MAHMAOUD SADDAM continued to employ and house RIADH HAMZA SADDEM after he was unlawfully in the United States and ineligible to work.

2.    In or about the summer of 2005, Saiz met Dautova at a party held at 656 Biltmore Drive in Virginia Beach.  Dautova told Saiz that she needed to get married or she would have to go back to Russia.

3.    On or about September 16, 2005, in Norfolk, Virginia, Saiz and Dautova completed and signed a Commonwealth of Virginia Marriage Register and were married by a Marriage Commissioner at the Norfolk Circuit Court.  Saiz and DAUTOVA listed their address as 656 Biltmore Drive in Virginia Beach.

4.    From on or about September 16, 2005, until in or about March of 2006, Saiz and DAUTOVA lived at 205 Bob Lane in Virginia Beach, to make it appear as if they were in a bonafide marriage.

5.    In or about October 2005, Saiz applied for an adjustment of BAH listing Dautova as his spouse and began receiving increased payments from the United States Navy for which he

was not entitled.  To date Saiz has received approximately $20,402.40 based on his fraudulent marriage.

6.     In or about October 2005, Saiz and DAUTOVA obtained a joint bank account, joint insurance and a joint cell phone bill to make it appear as if they were in a bonafide marriage.

7.     On or about May 18, 2006, Saiz and DAUTOVA, in Virginia, signed their respective Forms G-325A, Biographic Information; DAUTOVA signed her Form I-485, Application to Register Permanent Residence or Adjust Status; and Saiz signed his Form I-130 Petition for Alien Relative.  These forms were received by the USCIS on or about May 24, 2006 All of these forms contained a material misrepresentation with regard to DAUTOVA's current address since she never resided with Saiz at 5970 Margate Avenue in Virginia Beach.

8.     In or about the Fall of 2006, KOBYLYATSKAYA, who was an illegal alien at the time, is offered a job by MAHMOUD SADDAM to work at his restaurant.  Dautova was also employed there at this time.

9.     In or about the Fall of 2006, Saiz called Dautova and asked if you have anyone who wants to get in a fake marriage because I have a guy on the ship.

10.    In or about the Fall of 2006, Dautova gave KOBYLYATSKAYA's phone number to Saiz for the purpose of setting up a fraudulent marriage.

11.    In or about September 2006, in Virginia Beach, Virginia, at a restaurant owned by defendant MAHMOUD SADDAM,  defendant RIADH HAMZA SADDEM offered $20,000 to

T.B. to enter into a marriage so that RIADH HAMZA SADDEM could obtain permanent legal status in the United States.

12.     On or about October 23, 2006, in Norfolk, Virginia, Saiz and DAUTOVA appeared for their interview with USCIS in Norfolk, Virginia, and during that interview Saiz and DAUTOVA, while under oath, gave false answers to the USCIS interviewing officer to make the marriage appear legitimate.

13.     In or about October 2006, in order to support DAUTOVA's Application to Register Permanent Resident or Adjust Status pending before USCIS, DAUTOVA submitted joint tax filings, W2's, records of a joint bank account in the name of Matthew and Liliya Saiz, and joint car insurance. All of this documentation was submitted to USCIS.

14.     On or about January 23, 2007, in Norfolk, Virginia, KOBYLYATSKAYA and HARDY completed and signed a Commonwealth of Virginia Marriage Register and were married by a Marriage Commissioner at the Norfolk Circuit Court.   KOBYLYATSKAYA and HARDY listed their address as 314 Chase Arbor Court, Virginia Beach.

15.     In or about February, 2007, in Virginia Beach KOBYLYATSKAYA added HARDY to the lease at 314 Chase Arbor Court, Virginia Beach.

16.     In or about February 2007, HARDY  applied for an adjustment of BAH listing KOBYLYATSKAYA as his spouse and began receiving increased payments from the United States Navy for which he was not entitled.  To date HARDY has received approximately $25, 000 based on his fraudulent marriage.

17.    On or about April 16, 2007,  KOBYLYATSKAYA and HARDY , in Virginia, signed their respective Forms G-325A, Biographic Information; KOBYLYATSKAYA signed her Form I-485, Application to Register Permanent Residence or Adjust Status; and HARDY signed his Form I-130 Petition for Alien Relative.  These forms were received by the USCIS on or about May 25, 2007.

18.    In or about the summer of 2007, in Virginia Beach, Virginia,  RIADH HAMZA SADDEM and MAHMOUD SADDAM met with the sister of T.B.,  an unindicted co-conspirator (UC1), and offered to buy UC1 a house, a car, and to find UC1 a job, in exchange for UC1 marrying RIADH HAMZA SADDEM so he could obtain permanent legal status in the United States.

19.    In or about August 2007, in Virginia Beach, Virginia, MAHMOUD SADDAM told UC1 and RIADH HAMZA SADDEM to take pictures, get a ring, have a party where lots of pictures would be taken so it would appear as if they were in a bonafide marriage.  MAHMOUD SADDAM told UC1 that she would have to go to an interview with USCIS with RIADH HAMZA SADDEM where they would have to know information about each other to make it appear as if they were in a bonafide marriage.

20.    On or about September 10, 2007 , in Virginia Beach, Virginia,  RIADH HAMZA SADDEM and UC1 completed and signed a Commonwealth of Virginia Marriage Register and were married by a Marriage Commissioner at the Virginia Beach Circuit Court.  Defendant

RIADH HAMZA SADDEM  listed 204 Matt Lane, Virginia Beach, VA as the marital address which was the home of MAHMOUD SADDAM.

21.     On or about September 14, 2007, UC1 moved to Tennessee with her current boyfriend.

22.     On or about September 17, 2007, UC1 received a wire transfer in Tennessee for $50 from RIADH HAMZA SADDEM in Virginia in the name of "Kevin Moody".  RIADH HAMZA SADDEM attempted to entice UC1 to come back to Virginia.

23.     On or about September 18, 2007, UC1 received a wire transfer in Tennessee  for $100  from RIADH HAMZA SADDEM in Virginia  in his own name.  RIADH HAMZA SADDEM told UC1 the money was for a bus ticket so she could return from Tennessee.

24.     On or about September 26, 2007, UC1 received a wire transfer in Tennessee for $40 from RIADH HAMZA SADDEM in Virginia in his own name.

25.     On or about September 26, 2007, UC1 took a bus from Tennessee to Virginia and moved in with her mother for several days.

26.     In or about the beginning of October, 2007 UC1 moved into 204 Matt Lane, Virginia Beach, VA with RIADH HAMZA SADDEM and MAHMOUD SADDAM.

27.      In or about the middle of October, 2007, UC1 moved back to Tennessee to be with her boyfriend.

28.      In or about the end of October, 2007, UC1 moved back into 204 Matt Lane, Virginia Beach, VA with RIADH HAMZA SADDEM and MAHMOUD SADDAM.

29.     In or about the beginning of November, 2007, UC1 moved out again and moved in with another friend.

30.     In or about the beginning of November, 2007, RIADH HAMZA SADDEM and MAHMOUD SADDAM began to pressure UC1 to get a job.  UC1 took a job as a waitress at an exotic dancing club.

31.     In or about the beginning of November 2007,  RIADH HAMZA SADDEM and MAHMOUD SADDAM expressed displeasure with UC1 choice of employment  and UC1 moved back to Tennessee.

32.     On or about November 30, 2007, RIADH HAMZA SADDEM and UC1 signed their respective Forms G-325A, Biographic Information; RIADH HAMZA SADDEM  signed his Form I-485, Application to Register Permanent Residence or Adjust Status; and UC1 signed her Form I-130 Petition for Alien Relative.  These forms were received by the USCIS on or about April 10, 2008 at the Service Center.   The I-130 contained a material misrepresentation that UC1 and RIADH HAMZA SADDEM  were currently residing together at 204 Matt Lane, Virginia Beach , Virginia because in fact UC1 was not living there at the time the papers were filed.

33.     On or about December 11, 2007 UC1 met with MAHMOUD SADDAM and RIADH HAMZA SADDEM. MAHMOUD SADDAM offered to pay UC1 $200 per month and to purchase a car for her when she received a driver's license in exchange for continuing in the fraudulent marriage.

34.   On or about January 9, 2008, in Norfolk, Virginia, KOBYLYATSKAYA and HARDY appeared for their interview with USCIS in Norfolk, Virginia, and during that interview KOBYLYATSKAYA and HARDY, while under oath, gave false answers to the USCIS interviewing officer to make the marriage appear legitimate.

35.   In or about January 2008, in order to support KOBYLYATSKAYA's Application to Register Permanent Resident or Adjust Status pending before USCIS, KOBYLYATSKAYA submitted joint tax filings, records of a joint bank account, joint utility accounts and joint car insurance. All of this documentation was submitted to USCIS.

36.   On or about February 20, 2008 MAHMOUD SADDAM paid UC1 $400 to sign a fraudulent affidavit based on UC1's fraudulent marriage to RIADH HAMZA SADDEM for the purpose of improperly influencing an immigration judge.

37.   On or about March 18, 2008, AROUA SADDAM counseled UC1 that she would have to act like UC1 really wanted RIADH HAMZA SADDEM to get out, UC1 would have to say he did not do anything and UC1 wanted him out, UC missed him, UC1 loved him, whatever the f__k UC1 needed to say just to keep UC1 from getting in trouble too.

38.   On or about March 19, 2008, UC1 met with MAHMOUD SADDAM for the purpose of UC1 signing a false affidavit which stated that her marriage with RIADH HAMZA SADDEM was legitimate, so that MAHMOUD SADDAM could submit the affidavit to the immigration court.

39.     On or about March 19, 2008, UC1 and MAHMOUD SADDAM appeared in immigration court to obtain a bond for RIADH HAMZA SADDEM based on the false affidavit which indicated the marriage was legitimate.

40.     On or about March 20, 2008, UC1 s was paid $500 by MAHMOUD SADDAM for UC1's participation in the bail hearing.

41.     On or about September 12, 2008, in Virginia Beach Virginia, MAHMOUD SADDAM assisted RIADH HAMZA SADDEM and UC1 to practice the fraudulent answers they would give the USCIS adjudicator during interview to make it appear as if they were in a bonafide marriage. MAHMOUD SADDAM agreed to pay UC1 $500 if they were successful in the interview.

42.     On or about September 19, 2008 AROUA SADDEM drove UC1 and RIADH HAMZA SADDEM to a photography studio for the purpose of taking fraudulent pictures to make it appear as if they were in a bonafide marriage.

43.     On or about September 24, 2008, MAHMOUD told KOBYLYATSKAYA to tell UC1about your immigration interview.  UC1 asked KOBYLYATSKAYA what if the marriage is not real and KOBYLYATSKAYA replied, they cannot prove it.  UC1 asked KOBYLYATSKAYA if she practiced her answers with her husband and KOBYLYATSKAYA answered yes.  KOBYLYATSKAYA also said, they are not going to ask you too many questions, you are not military, if they see military they will ask you a lot of questions.

44.     On or about September 30, 2008, MAHMOUD SADDAM drove RIADH HAMZA SADDEM and UC1 to the interview with USCIS.

45.     On or about September 30, 2008, in Norfolk, Virginia, RIADH HAMZA SADDEM submitted fraudulent sworn affidavits to USCIS from MAHMOUD SADDAM, AROUA SADDAM and an unidentified co-conspirator attesting that RIADH HAMZA SADDEM's marriage was bonafide

46.     On or about September 30, 2008, in Norfolk, Virginia, during an interview with USCIS RIADH HAMZA SADDEM gave false answers to the USCIS interviewing officer to make the marriage appear legitimate.

47.     On or about October 3, 2008, AROUA SADDAM, in an effort to persuade UC1 not to testify, called UC1 and left a voice mail which said, "UC1, I just wanted to say thank you, you c__t, for lying about the marriage, you know damn well the marriage wasn't fake and for you to put us all in this situation is pretty f__ked up.

48.     On our about October 3, 2008, AROUA SADDAM and an unindicted co-conspirator followed UC1 while she drove to several locations.

49.     On or about October 20, 2008 the same unindicted co-conspirator posted on her My SPACE page, "UC1 works for the police"

50.     On or about October 21, 2008, the same unindicted co-conspirator changed her My SPACE page and took down, "UC1 is work with the Cops" and replaced it with, "I had to take the message down so my girl would not get int trouble"

51.    On or about October 22, 2008, the same unindicted co-conspirator changed her My SPACE page and wrote, "UC1, don't be afraid" and "Why can't some people stop being P__sys n just be prepared to get a smackdown".

(In violation of title 18, United States Code, Section 371.)


## Count Two

1.    The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.    On or about January 23, 2007, in Norfolk, in the Eastern District of Virginia, defendants IRINA KOBYLYATSKAYA a/k/a "Irina Hardy"  and ROSS ANTHONY HARDY knowingly and unlawfully entered into a marriage for the purpose of allowing IRINA KOBYLYATSKAYA a/k/a "Irina Hardy  to evade the provisions of the immigration laws of the United States.

(In violation of Title 8, United States Code, Section 1325(c) and 18 United States Code, Section 2.)

## Count Three

1.      The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.      On or about September 10, 2007, in Virginia Beach, in the Eastern District of Virginia, defendant RIADH HAMZA SADDEM aided and abetted by MAHMOUD SADDAM knowingly and unlawfully entered into a marriage for the purpose of allowing RIADH HAMZA SADDEM to evade the provisions of the immigration laws of the United States.

(In violation of Title 8, United States Code, Section 1325(c) and 18 United States Code, Section 2.)

## Count Four

1.      The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.      On or about November 30, 2007, in Virginia Beach, Virginia, in the Eastern District of Virginia and elsewhere, defendant RIADH HAMZA SADDEM aided and abetted by defendant MAHMOUD SADDAM, did knowingly cause to be made false statements under oath, in a case, proceeding and matter related to, and under, and by virtue of a law of the United States relating to naturalization, citizenship, and registry of aliens, in that UC1 declared on a Form I-

130, Petition for Alien Relative, that UC1's current address was 204 Matt Lane, Virginia Beach, Virginia, when defendants RIADH HAMZA SADDEM and MAHMOUD SADDAM then and there well knew UC1 did not reside at 204 Matt Lane, Virginia Beach, Virginia.

(In violation of Title 18, United States Code, Sections 1015(a) and 2.)

## Count Five

1.    The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.    On or about September 30, 2008, in Norfolk, Virginia, in the Eastern District of Virginia, defendant RIADH HAMZA SADDEM aided and abetted by MAHMOUD SADDAM did knowingly make false statements under oath, in a case, proceeding and matter related to, and under, and by virtue of a law of the United States relating to naturalization, citizenship, and registry of aliens, in that:

3.    During the USCIS hearing, defendant RIADH HAMZA SADDEM and UC1 appeared as witnesses and were asked by a district adjudications officer where do you currently live.

4.    In response to the aforesaid question, defendant RIADH HAMZA SADDEM and UC1 stated under oath that they lived at 204 Matt Lane, Virginia Beach, Virginia  or words to that effect.

5.      The aforesaid statements of the defendant was false, as they then and there well knew that UC1 did not reside at 204 Matt Lane, Virginia Beach, Virginia.

(In violation of Title 18, United States Code, Sections 1015(a) and 2.)


## Count Six

1.      The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.      On or about September 25, 2008, in Virginia Beach, Virginia, in the Eastern District of Virginia and elsewhere, defendant AROUA SADDAM aided and abetted by defendant RIADH HAMZA SADDEM , did knowingly cause to be made false statements under oath, in a case, proceeding and matter related to, and under, and by virtue of a law of the United States relating to naturalization, citizenship, and registry of aliens, in that AROUA SADDAM declared in a sworn affidavit presented to USCIS by RIADH HAMZA SADDEM, that RIADH HAMZA SADDEM and UC1 had been happily married for over a year and currently reside at 204 Matt Lane, Virginia Beach, Virginia, when defendants  AROUA SADDAM and RIADH HAMZA SADDEM then and there well knew UC1 did not reside at 204 Matt Lane, Virginia Beach, Virginia and had only married for the purpose of obtaining and immigration benefit.

(In violation of Title 18, United States Code, Sections 1015(a) and 2.)

## Count Seven

1.      The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.      On or about January 9, 2008, in Norfolk, Virginia, in the Eastern District of Virginia, defendants IRINA KOBYLYATSKAYA a/k/a "Irina Hardy" and ROSS ANTHONY HARDY did knowingly make false statements under oath, in a case, proceeding and matter related to, and under, and by virtue of a law of the United States relating to naturalization, citizenship, and registry of aliens, in that:

3.      During the USCIS hearing, defendants IRINA KOBYLYATSKAYA a/k/a "Irina Hardy" and ROSS ANTHONY HARDY appeared as witnesses and were asked by a district adjudications officer when was the last time you had sexual relations.

4.      In response to the aforesaid question, IRINA KOBYLYATSKAYA a/k/a "Irina Hardy" stated under oath yesterday.

5.      In response to the aforesaid question, ROSS ANTHONY HARDY stated under oath sometime in December.

6.      The aforesaid statements of the defendants were false, as they then and there well knew that IRINA KOBYLYATSKAYA a/k/a "Irina Hardy" and ROSS ANTHONY HARDY UC1 have never had sexual relations.

(In violation of Title 18, United States Code, Sections 1015(a) and 2.)

## Count Eight

1.      The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.      On or about January 9, 2008, in Norfolk, Virginia, in the Eastern District of Virginia, defendants IRINA KOBYLYATSKAYA a/k/a "Irina Hardy" and ROSS ANTHONY HARDY did knowingly make false statements under oath, in a case, proceeding and matter related to, and under, and by virtue of a law of the United States relating to naturalization, citizenship, and registry of aliens, in that:

3.      During the USCIS hearing, defendants IRINA KOBYLYATSKAYA a/k/a "Irina Hardy" and ROSS ANTHONY HARDY appeared as witnesses and were asked by a district adjudications officer when did you move in together.

4.      In response to the aforesaid question, IRINA KOBYLYATSKAYA a/k/a "Irina Hardy" stated under oath, about a month after we were married, he was in a car accident and could not move in because he did not have a car.

5.      In response to the aforesaid question, ROSS ANTHONY HARDY stated under oath, a few days to a week after we were married.

6.      The aforesaid statements of the defendants were false, as they then and there well knew that IRINA KOBYLYATSKAYA a/k/a "Irina Hardy" and ANTHONY ROSS did not move in together before December 2007.

(In violation of Title 18, United States Code, Sections 1015(a) and 2.)

21

## Count Nine

In or about February 2007, in the Eastern District of Virginia, the defendant ROSS ANTHONY HARDY made and presented to the United States Navy a claim upon the United States Navy, that is, a claim for basic allowance for housing (BAH), knowing that the claim was false, fictitious and fraudulent, in that ROSS ANTHONY HARDY had engaged in a marriage fraud scheme and his spouse was not, in fact, a true spouse and was neither cohabiting with ROSS ANTHONY HARDY nor being supported by him.

(In violation of Title 18, United States Code, Sections 287 and 2.)

## Count Ten

1.      The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.      On or about October 1, 2008, in the Eastern District of Virginia, defendants RIADH HAMZA SADDEM and MAHMOUD SADDAM did knowingly corruptly persuade and attempt to persuade another person, to wit: UC1, with the intent to influence the testimony of UC1 in an official proceeding, to wit: an interview with United States Citizenship and Immigrations Services pursuant to an I-130 Petition for an alien relative.

(In violation of Title 18, United States Code, Section 1512(b)(1)).

## Count Eleven

1.     The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.     On or about September 30, 2008, in the Eastern District of Virginia, defendant AROUA SADDEM did knowingly corruptly persuade and attempt to persuade another person, to wit: UC1 with the intent to influence the testimony of UC1, in an official proceeding, to wit: the matter of the *United States vs. Riadh Hamza Saddem et. al.*, Criminal Number 2:08cr168.

(In violation of Title 18, United States Code, Section 1512(b)(1)).

## Count Twelve

1.     The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.     On or about March 19, 2008 in the Eastern District of Virginia, defendant MAHMOUD SADDAM did knowingly falsify a document with the intent to impede, obstruct, and influence the proper administration of any matter within the jurisdiction of any department or agency of the United States: to wit defendant MAHMOUD SADDAM did knowingly falsify a sworn affidavit which was submitted to an immigration judge within the Department of Homeland Security for the purpose of improperly influencing a bond determination.

(In violation of Title 18, United States Code, Section 1519).

23

## Count Thirteen

1.     The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.     Beginning in or about November 2001, and continuing until September 30, 2008, in the Eastern District of Virginia, the defendant MAHMOUD SADDAM, encouraged or induced an alien to wit: Riahd Hamza Saddem to reside in the United States knowing or in reckless disregard of the fact that such residence is or will be in violation of the law for the purpose of private financial gain.

(In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i))

## Count Fourteen

1.     The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.     Beginning in or about Fall of 2006, and continuing until September 30, 2008, in the Eastern District of Virginia, the defendant MAHMOUD SADDAM, encouraged or induced an alien to wit: Irina Kobylyatskaya a/k/a "Irina Hardy" to reside in the United States knowing or in reckless disregard of the fact that such residence  is or will be in violation of the law for the purpose of private financial gain.

(In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i).)

## Count Fifteen

1.      The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.      Beginning in or about November 2001, and continuing until September 30, 2008, in the Eastern District of Virginia, the defendant MAHMOUD SADDAM, knowing or in reckless disregard that an alien, namely, Riahd Hamza Saddem had remained in the United States in violation of law, did conceal, harbor and shield from detection, and attempt to conceal, harbor and shield from detection, said aliens in any place to wit: 204 Matt Lane, City of Virginia Beach, Virginia, including any building and any means of transportation for the purpose of private financial gain.

(In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i).)

## Count Sixteen

1.      The allegations contained in paragraphs one through thirteen of the section of this indictment entitled "Introductory Allegations" are re-alleged and incorporated by reference as if set forth within.

2.      On or about September 13, 2008, in the Eastern District of Virginia, defendant AROUA SADDAM did corruptly endeavor to influence, obstruct, and impede the due

administration of justice in *U.S. v. Riadh Hamza Saddem et. al.*, Criminal Number 2:08cr168 in the U.S. District Court for the Eastern District of Virginia by persuading UC1 to falsely testify that her marriage to RIADH HAMZA SADDEM was lawful and not for the purpose of evading the immigration and naturalization laws of the United States.

(In violation of Title 18, United States Code, Section 1503).


## Forfeiture Count

The defendant, MAHMOUD SADDAM, if convicted of the violation alleged in Counts Thirteen, Fourteen or Fifteen of this Indictment, as part of the sentencing of the defendant pursuant to F.R.Cr.P. 32.2, shall forfeit to the United States:

1.    Any vehicles used in the commission of the violations;

2.    Any and all property, real or personal, constituting, derived from, or traceable to any proceeds the defendant obtained, directly or indirectly, as the result of such violation; and

3.    Any of the defendants' property used, or intended to be used to facilitate the commission of such violation;

| The Specific property identified includes, but is not limited to: |
| --- |
| Defendant's interest in real property located at 204 Matt Lane, Virginia Beach, Virginia. |

> Defendant's interest in real property located 485 South
>
> Independence, Virginia Beach, Virginia

(All in violation of Title 8, United States Code, Section 1324(b), and Title 18, United States Code, Section 982(a)(6)(A).)

*United States v. Riadh Hamza Saddem, et al.*

2:08 cr <u>168</u>

A TRUE BILL:

REDACTED COPY

_____

FOREPERSON

DANA J. BOENTE
ACTING UNITED STATES ATTORNEY

REDACTED COPY

By: _____

Joseph E. DePadilla
Assistant United States Attorney
Attorney for the United States
U.S. Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number:  (757) 441-6331
Office Facsimile: (757) 441-6689
E-mail address: joe.depadilla@usdoj.gov

No.

## UNITED STATES DISTRICT COURT
Eastern District of Virginia
Norfolk Division

THE UNITED STATES OF AMERICA

vs.

RIADH HAMZA SADDEM,
MAHMOUD SADDAM,
AROUA SADDAM,
ROSS ANTHONY HARDY,
and
IRINA KOBYLYATSKAYA, a/k/a "Irina Hardy"

**UNDER SEAL**

**INDICTMENT**
18 U.S.C. § 371 - Conspiracy (Count 1)
8 U.S.C. § 1325(c) - Marriage Fraud (Count 2-3)
18 U.S.C. § 1015 - False Statements in an Immigration Proceeding (Counts 4-8)
18 U.S.C. § 287 - False Claim (Count 9)
18 U.S.C. § 1512(b)(1) - Tampering with a witness (Count 10-11)
18 U.S.C. § 1519 - Falsification of records in a Federal Investigation (Count 12)
8 U.S.C. § 1324(a)(1)(A)(iv) - Inducing an Alien to Reside Illegally in the United States for Financial Gain (Counts 13-14)
8 U.S.C. § 1324 (a)(1)(A)(iii) - Harboring Illegal Aliens for Financial Gain (Count 15)
18 U.S.C. § 1503 - Obstruction of Justice (Count 16)

A true bill.

----------------------------------------------------------------

Foreperson

REDACTED COPY

Filed in open court this 7th day,
of November A.D. 2008

----------------------------------------------------------------

Clerk

Bail, $

----------------------------------------------------------------